# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **REGINALD CARTER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **DONNA M. MURRAY, Office Manager,** | : | |
| **ANDREW W. LUND, Regional Vice** | : | |
| **President, DENISE CLAY, TIMOTHY R.** | : | |
| **MORAGNE, JR., FANNIE COLLIER and** | : | |
| **HENRY BRISBON** | : | **NO. 21-3289** |

## MEMORANDUM

**Savage, J.**                                                                                   **September 14, 2021**

Plaintiff Reginald Carter filed this civil action alleging a violation of his civil rights in connection with his housing at Venango House, an apartment building in Philadelphia, Pennsylvania. Named as defendants are Donna M. Murray and Andrew W. Lund, the Office Manager and Regional Vice-President of the management company, respectively. Carter also names as defendants fellow tenants Denise Clay, Timothy R. Moragne, Jr., Fannie Collier, and Henry Brisbon (collectively "the tenant defendants").

He seeks leave to proceed *in forma pauperis*. For the following reasons, we shall grant the application to proceed *in forma pauperis* and dismiss the Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with leave to file an amended complaint.

**Factual Allegations**[1]

As set forth in his lengthy complaint,[2] Carter's claims arise out of the alleged failure of the apartment building's management to satisfactorily address his repair requests. He also alleges discord between him and his fellow tenants, in particular, members of the tenants' council.

Carter, an African-American, contends that his problems began on August 28, 2018 when he signed a lease for an apartment at Venango House.[3] Prior to moving into his apartment, Carter discovered that "[b]ecause [he has] lung disease [he] was unable to move into the newly carpeted and painted apartment."[4] He asked defendant Murray, the office manager of Venango House, to remove the carpet. He was informed that his request could not be honored,[5] but he was offered another apartment in the building which did not have carpeting and was prepared for him to move in.[6] However, he did not move in "until mid to late October so that the new paint would have a chance to off-gas, or lose the toxins that were being emitted. The linoleum floors and adhesives were also

---

[1] The factual allegations are taken from Carter's Complaint and its attached exhibits. The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] *See* Complaint ("Compl.") at 1-14.   (Doc. No. 1).

[3] Compl. at 2-3.

[4] *Id.* at 3.

[5] *Id.*

[6] *Id.*

off-gasing or releasing toxins into the environment."[7]  Carter was dissatisfied with other aspects of the apartment, such as dust and "several swaths of unfinished wall."[8]

Carter took issue with other tenants, including defendant Collier, who smoked and used various deodorizers to mask the smell.[9]  By letter dated May 15, 2019, Carter raised his concerns to Murray.[10]  He requested to be moved out of his apartment so that it could be repainted and the floors replaced.[11]  A tenants' council meeting was held on June 4, 2019 to address Carter's smoking issues.[12]  Nevertheless, defendant Brisbon, who was then tenant council President, "voiced no concerns for those like [Carter] with lung disease and only asked defendant Ms. Donna if cigarette smoking was going to be prohibited.  Defendant Henry Bris[b]on smokes cigarettes."[13]

Carter continued to experience problems related to ongoing repairs at Venango House.  For example, on December 17, 2019, Carter informed Murray by letter "that [he] forbid[s] a contractor to paint [his] door because [he has] copd lung disease.  [He] asked that painting be ceased until such time that tenants with lung disease might seek exemption from having their doors painted."[14] He claims that as a result "[t]he painting

---

[7] *Id.*

[8] *Id.*

[9] *Id.* at 4.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* at 5.

was stopped [but] no one at the Venango House to [his] knowledge was asked if they wanted to be exempt from having their doors painted."[15]

In November 2019, Carter was elected president of the tenant council.[16] During his tenure, Carter alleges that he had several disputes with other tenants and members of the council. For instance, he alleges that defendant Clay, who was secretary at that time, "seemed to have an attitude toward" him during the December 2019 tenants' council meeting.[17] Furthermore, Carter and Clay argued over a flyer she had prepared for the January 9, 2020 meeting.[18] During that meeting, tensions continued. After consulting with Clay, defendant Moragne, who was vice-president of the tenants' council, "stood in the floor and proclaimed, 'They don't like you.'"[19] Moragne called for a vote to remove Carter from office.[20] An emergency tenants' council meeting was scheduled for January 30, 2020; however, Carter was not made aware of the meeting.[21] Prior to that meeting, Carter had requested the resignation of Clay and Moragne from their positions on the

---

[15] *Id.* at 5-6.

[16] *Id.*

[17] *Id.* at 6.

[18] *Id.*

[19] *Id.*

[20] Carter avers that Clay, Moragne, and Brisbon are "part of a [clique] here at Venango House. . . . none of them have ever shown concern for anyone with lung disease." *Id.* at 6-7.

[21] *Id.* at 7.

council.[22]  Unbeknownst to him, Carter was voted out of the office at the meeting.[23]  He claims that proper procedures were not followed in doing so.[24]  Carter received a notification of the council's decision signed by Moragne, Clay, Brisbon, and Collier.[25]

Carter continued to have problems with repair issues.  He alleges that on January 28, 2020, carpet adhesive was improperly removed in the hallways, creating an environmental hazard.[26]  Carter contends that he was hospitalized on two occasions in 2020 because he "could not walk a block without getting chest, neck, and face pains."[27]  He believes that "the stress of living at the Venango House was a major contributing factor."[28]  He contends that cigar and cigarette smoke from other tenants exacerbates his breathing problems.[29]  Carter also suggests that Venango House maintained inadequate COVID-19 protection policies.[30]

---

[22] *Id.* at 7-8.

[23] *Id.* at 8.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 9.

[27] *Id.* at 5.

[28] *Id.*

[29] *Id.* at 10.

[30] *See id.* at 10-11.

In January 2021, Carter advised Murray and a representative of Winn Companies[31] via email that the smell of paint and new carpeting exacerbated his symptoms.[32] In February 2021, he complained to Murray and others about the smell of cigar smoke in his apartment.[33] Carter claims: "I call it murder and institutional racism because of the racial makeup of those that live here[34] coupled with the fact that they refuse to give us round the clock security, there is no central air in my hallway, and they have out right ignored those of us who consistently complain about smoke and conditions. . . ."[35]

On February 22, 2021, Lund contacted Carter by email to address outstanding issues.[36] In response, Carter informed Lund that the smoking issues continued and that he needed to be permanently relocated instead of temporarily relocated to a hotel while repairs were conducted, as had previously been offered.[37] Carter claims that his request to be relocated "until such time that [his] apartment repair issues could be addressed" were "ignored from May 15, 2019 until March of 2021 -- and agreed to then as a result of [his] being in a state of duress and deciding to once again advocate for [himself]."[38]

---

[31] Although Carter seeks relief from Winn Companies, *see* Compl. at 14, Winn Companies is not a named defendant.  It appears to be the property management company for Venango House.

[32] *Id.* at 11.

[33] *Id.* at 12.

[34] With regard to the tenants at Venango House, Carter claims that "all except a Latina are African American."  Compl. at 3.

[35] *Id.* at 12.

[36] *Id.*

[37] *Id.* at 13.

[38] *Id.* at 4-5.  Carter acknowledges that on July 19, 2019 he was informed by Murray by letter that his kitchen and bathroom floors would be replaced; however, he "rejected that offer because it did not include relocating" him.  *Id.* at 5.  In addition, on January 30, 2020, Murray requested that Carter participate in a

Carter further claims that Winn Companies has "no lung safety police [*sic*] at the Venango House with the exception of the managers office where defendant Ms. Murray does not allow cigarette smoking.  That is a double standard."[39]

Carter requests an Order requiring Winn Companies to relocate him to a place of his choosing at its expense, to remove the tenant defendants from the tenant council, to reinstate him as president of the Venango House tenant council.[40]  Carter also seeks an order directing Winn Companies to evict Brisbon and to immediately disallow smoking at Venango House.[41]  Additionally, he requests monetary damages from the tenant defendants and from Winn Companies.[42]

## Standard of Review

Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), we must dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  The complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

meeting in her office, with Lund participating by phone, to address Carter's outstanding concerns.  *Id.* at 7.  The meeting also was attended by the building's superintendent.  *Id.*  Carter describes the meeting as "congenial" but claims that it "didn't produce any positive long term results."  *Id.*

[39] *Id.* at 10.

[40] *Id.* at 14.

[41] *Id.*

[42] *Id.*

(quotations omitted). "[M]ere conclusory statements do not suffice." *Id.* Because Carter is proceeding *pro se*, we construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## Discussion

### *Constitutional Claims*

Carter alleges his First and Fourteenth Amendment rights were violated.[43] To establish a claim under section 1983, a plaintiff must allege facts, which if proven, establish: (1) the deprivation of a right secured by the Constitution or the laws of the United States; and (2) that the person depriving plaintiff of the right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citation omitted).

None of the defendants acted under color of state law. They are and acted as private citizens, not as state actors. Nothing in the Complaint suggests any factual or legal basis for concluding that the defendants are state actors who could be held liable under § 1983. Carter has not stated a plausible claim for violation of his constitutional rights under § 1983 against any defendant.

### *The Fair Housing Act*

Although Carter does not explicitly refer to the statute, we shall liberally construe his claims as brought under the Fair Housing Act ("FHA"). The FHA prohibits discrimination on the basis of race, color, religion, sex, familial status, or national origin, in a variety of real estate-related transactions. *See* 42 U.S.C. § 3604. The FHA's

---

[43] *Id.* at 2.

prohibition of racial discrimination "can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class." *White v. Barber*, 767 F. App'x 332, 334 (3d Cir. 2019) (per curiam) (citing *Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011)); *El v. People's Emergency Ctr.*, 438 F. Supp. 3d 283, 289-90 (E.D. Pa. 2020).

The Fair Housing Act protects against discrimination on the basis of disability. *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 104 (3d Cir. 2017) (citing *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 728 n.1 (1995); Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619 (1988)). The FHAA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2)(A). "Under the FHAA, 'handicap' means 'a physical or mental impairment which substantially limits one or more of [a] person's major life activities.'" *431 E. Palisade Ave. Real Estate, LLC v. City of Englewood*, 977 F.3d 277, 284 (3d Cir. 2020) (quoting 42 U.S.C. § 3602(h)(1)) (alteration in original). With respect to disability discrimination under § 3604(f), a plaintiff "may bring three general types of claims: (1) intentional discrimination claims (also called disparate treatment claims) and (2) disparate impact claims, both of which arise under § 3604(f)(2), and (3) claims that a defendant refused to make 'reasonable accommodations,' which arise under § 3604(f)(3)(B)." *Id.*

Liberally construing Carter's *pro se* Complaint as we must, we interpret the Complaint as alleging that his repeated requests for repairs were not addressed timely or to his satisfaction on account of his race and is raising a claim that the defendants failed

to reasonably accommodate his medical conditions. Nevertheless, despite this liberal reading, the Complaint fails to state a plausible FHA or FHAA claim as currently pled.[44]

### *Discrimination Based on Race*

Carter's Complaint focuses on the habitability of the property he leased and his attempts to have repairs made in a particular manner. However, he makes only general, conclusory allegations regarding possible racial discrimination. Specifically, the Complaint alleges that he is African-American and, with regard to the other tenants, "all except a Latina are African-American."[45] Carter further alleges, "I call it murder and institutional racism because of the racial makeup of those that live here coupled with the fact that they refuse to give us round the clock security, there is no central air in my hallway, and they have outright ignored those of us who consistently complain about smoke and conditions until it becomes obvious that they are being watched by elected officials and an attorney who is a newspaper columnist and hosts of a radio show."[46]

Carter's generalized allegations of race-based actions are insufficient to state a claim under the FHA. *See Wilson v. Hillsborough Twp. Constr. Dep't*, 779 F. App'x 969, 972 (3d Cir. 2019) (*per curiam*) ("[E]ven if Wilson could bring a claim under the FHA for defendants' licensing, inspection, and tax assessment decisions, her vague, conclusory

---

[44] Carter did not cite to the FHA or the FHAA in his Complaint and he did not identify any defendant in connection with any of the various claims he has raised. *See generally* Compl. Indeed, Carter seeks relief from Winn Companies, yet Winn Companies is not named as a defendant. Nonetheless, we construe the Complaint as bringing FHA and FHAA claims against Murray and Lund. Carter has alleged no facts that the tenant defendants discriminated against him with respect to housing on the basis of his race or disability.

[45] Compl. at 2-3.

[46] *Id.* at 12.

speculations that those decisions were made for a discriminatory reason are insufficient to state a claim under the FHA."); *White*, 767 F. App'x at 334-35 (affirming dismissal of FHA claim and explaining that "it is not enough for White to merely allege a constitutional violation and state that Appellees discriminated against him; rather, White needed to elaborate and point to any context plausibly suggesting race discrimination. . . ."); *Jones v. 1260 Hous. Dev. Corp.*, Civ. A. No. 18-1420, 2018 WL 1757605, at *3 (E.D. Pa. Apr. 11, 2018) (dismissing FHA claim as conclusory). To the extent that Carter's Complaint sought to bring FHA claims based on race discrimination, they will be dismissed.

*Discrimination Based on Disability*

To state a reasonable accommodation discrimination claim under the FHAA, the plaintiff must plead facts showing: (1) accommodations are necessary to afford him equal opportunity to use and enjoy a dwelling; and (2) the defendant refused to make reasonable accommodations in rules, policies, practices, or services. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105 (3d Cir. 2018) (citing 42 U.S.C. § 3604(f)(3), (f)(3)(B)). The element of necessity "requires that an accommodation be essential, not just preferable." *Id.* at 107. The Third Circuit has held that a plaintiff must "establish a nexus between the accommodations that he or she is requesting and their necessity for providing handicapped individuals an 'equal opportunity' to use and enjoy housing." *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 459 (3d Cir. 2002).

Carter's alleges that he has "lung disease," which he also refers to COPD or chronic obstructive pulmonary disease, and that he received treatment for possible heart

problems.[47]   He asserts that he has breathing difficulties that are exacerbated by cigar, cigarette, and marijuana smoke, incense, dust, and various cleaning products.[48]   He further claims that Winn Companies has "no lung safety [policy] at Venango House with the exception of the managers office where defendant Ms. Murray does not allow cigarette smoking.   That is a double standard."[49]

Assuming, *arguendo*, that the Complaint alleges that Carter's medical conditions qualify as a disability for purposes of the FHAA, it does not plead facts alleging the statutory elements of a failure to accommodate claim.   The Complaint and attached exhibits describe Carter's various grievances regarding his living conditions at Venango House, and that his requests were not addressed timely or to his satisfaction.   However, the Complaint and exhibits also reflect that Murray and Lund sought resolution of his complaints by meeting with Carter and offering to relocate him to an apartment without carpeting.[50]   In addition, he was offered the opportunity to move into a hotel while his floors were refinished.[51]   Carter contends that he repeatedly raised concerns with Murray and Lund regarding second-hand cigar, cigarette, and marijuana smoke.   An email from

---

[47] *See* Compl. at 3-5, 9-10.

[48] *Id.*

[49] *Id.* at 10.

[50] *See, e.g.,* Compl. at 7, 12, 19-25.

[51] *See, e.g.*, *id.* at 13, 21.

Lund dated March 5, 2021 appears to indicate that Venango House "would work toward implementing a smoke free policy."[52]

On the face of the complaint, it is apparent the defendants addressed his requests, and he has not plead facts plausibly alleging that the defendants failed to accommodate him. See *Vorchheimer*, 903 F.3d at 111 ("To survive a motion to dismiss, a plaintiff need only plausibly plead enough facts to make out the three elements set forth in § 3604(f)(3)(B): refusal, reasonable accommodation, and necessity/equal opportunity."); see also *Coyne v. Holy Fam. Apartments*, Civ. A. No. 19-4583, 2020 WL 2063475, at *6 (E.D. Pa. Apr. 29, 2020) (dismissing FHAA reasonable accommodation claim for failure to plausibly state such a claim). Accordingly, Carter's disability discrimination claim under § 3604(f)(2)(A) is not plausible and will be dismissed without prejudice.

*State Law Claims*

If Carter is attempting to assert state law tort claims against Moragne and Clay, we have no jurisdiction over such claims.[53] Because we have dismissed the federal claims, we decline to exercise supplemental jurisdiction over any state law claims.

The only possible independent basis for jurisdiction over any such claims is diversity jurisdiction under 28 U.S.C. § 1332(a). Section 1332(a) requires complete diversity between all plaintiffs and all defendants. No plaintiff may be a citizen of the same state as any defendant. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli*

---

[52] *Id.* at 26.

[53] *See* Compl. at 7-8 (alleging these defendants acted to "defame my character and to slander my name").

*Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

Here, the Complaint suggests that Carter, Moragne and Clay are citizens of Pennsylvania. Indeed, they all reside in the same building. Thus, because it appears that complete diversity does not exist, we do not have subject matter jurisdiction over any state law claims he may be raising. *See id.* at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence.") (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## Conclusion

For the foregoing reasons, we shall grant Carter leave to proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Accordingly, we shall dismiss the Complaint without prejudice and grant Carter leave to file an amended complaint if he seeks to cure the deficiencies of his Complaint.[54]

---

[54] Of course, the dismissal of the state law claims is without prejudice to Carter's bringing them in state court.